UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVETTE GENTRY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>EMPIRE MEDICAL TRAINING, et al.,<br><br>　　　　Defendants. | Case No. 13-cv-02254-WHO<br><br>**ORDER DENYING DEFENDANT EMPIRE MEDICAL'S MOTION TO COMPEL ARBITRATION AND DENYING DEFENDANT DOCTOR COSENTINO'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Re: Dkt. Nos. 30, 34, 42, 49, 59 |

## INTRODUCTION

Before the Court is Defendant Empire Medical Training Inc.'s motion to compel arbitration (Dkt. No. 34) and Defendant Dr. Stephen Cosentino's motion to dismiss for lack of personal jurisdiction. Dkt. No. 30. For the reasons described below, the Court DENIES both motions. Plaintiff Dr. Yvette Gentry's motion for leave to take jurisdictional discovery regarding Dr. Cosentino's acts directed towards California and his use of Empire Medical as an alter ego (Dkt. No. 42) is DENIED as moot because the Court denies Dr. Stephen Cosentino's motion to dismiss.

## BACKGROUND

Dr. Gentry is an OB/GYN in California who practices Aesthetic Medicine, a medical specialty primarily concerned with treating skin conditions associated with aging. Dkt. No. 21

("FAC") ¶ 16.  In order to expand the number of procedures she offered her patients, Dr. Gentry enrolled in two workshops presented by Defendant Empire Medical Training ("Empire Medical") in San Francisco, California in October 2012.  The workshops were entitled Comprehensive Dermal Filler and Advanced Aesthetics Workshop (collective, the "Empire Medical Workshops").  *Id.* ¶ 18.

Dr. Gentry alleges that the Empire Medical Workshops were taught by Defendant William Horninger.[1]  Dr. Gentry alleges that Mr. Horninger identified himself as Dr. Horn, but is not a licensed physician, a fact allegedly known by Defendant Dr. Stephen Cosentino, owner of Empire Medical.  *Id.* ¶¶ 14, 20-22.  Dr. Gentry alleges that Mr. Horninger injected adermal filler into a blood vessel in Dr. Gentry's forehead during one of the Empire Medical Workshops, causing immense pain and, five days later, "her skin began to swell up and a large area of Dr. Gentry's forehead turned a deep purple color."  *Id.* ¶ 37.  According to Dr. Gentry, and unbeknownst to her at the time, this particular dermal filler, Prevelle Silk, should not be injected into a blood vessel because of the high risk of infarction or necrosis, which cause tissue death and permanent discoloration of the skin.  Dr. Gentry alleges that her "scarring and bruising have diminished somewhat" but remain "permanent, prominent, and noticeable," causing her physical and emotional harm.  *Id.* ¶¶ 41-42.  Dr. Gentry alleges that her medical practice has suffered "because she is no longer able to use her own face as an advertisement for prospective patients who are interested in aesthetic procedures."  *Id.* ¶ 45.

Dr. Gentry's First Amended Complaint ("FAC"), filed on June 13, 2013, asserts causes of action for battery, failure to warn, negligence, negligent retention, negligent supervision, intentional misrepresentation, negligent misrepresentation, negligent infliction of emotional distress, violations of the California Unfair Competition Law (California Business Professions Code § 17200 *et seq*), and conspiracy to commit battery and unfair competition.

Empire Medical has moved the Court to compel arbitration and Dr. Cosentino has moved to dismiss the action as to him for lack of personal jurisdiction.

---

[1] Mr. Horninger filed a joiner to Empire Medical's motion to compel arbitration.  Dkt. No. 40.

**LEGAL STANDARD**

**I.  Motion to compel arbitration**

Pursuant to Section 2 of the Federal Arbitration Act, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.[2]  The United States Supreme Court has interpreted this language to mean that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686-87 (1996).

Whether a contract is unconscionable is a question of law.  *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1663, 18 Cal. Rptr. 2d 563 (1993).  In California, unconscionability includes an **"**absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 821, 104 Cal. Rptr. 3d 844 (Cal. App. 1st Dist. 2010) (citation omitted).  Accordingly, unconscionability has both a 'procedural' and a 'substantive' element.  *Id.*

Procedural unconscionability occurs where a contract or clause involves oppression, consisting of a lack of negotiation and meaningful choice, *or* surprise, such as where the term at issue is hidden within a wordy document.  *Id.*  "California law treats contracts of adhesion,[3] or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010).  Substantive unconscionability occurs where the provision at issue "reallocates risks in an objectively unreasonable or unexpected manner." *Lhotka*, 181 Cal. App. 4th at 821 (citation omitted).  "Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause."  *Id.* at 824-25 (citation

---

[2] Empire Medical asserts, and Dr. Gentry does not dispute, that the Federal Arbitration Act applies to this case.

[3] A contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 113 (Cal. 2000).

3

1  omitted).

2  Both the procedural and substantive elements must be met before a term will be deemed unconscionable, but both need not be present to the same degree. Rather, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th 83 at 114.

**II. Motion to dismiss for lack of jurisdiction**

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. The plaintiff then bears the burden of demonstrating that jurisdiction exists. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995); *Fields v. Sedgwick Assoc. Risks, Ltd.,* 796 F.2d 299, 301 (9th Cir. 1986). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (citations omitted). Conflicts in the evidence must be resolved in the plaintiff's favor. *Id.* "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. In such cases, we only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) (internal punctuation and citation omitted).

There are two types of personal jurisdiction, general and specific. *Fields*, 796 F.2d at 301. General jurisdiction exists where a nonresident defendant's activities within a state are "substantial" or "continuous and systematic." *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1287 (9th Cir.1977). In the absence of general jurisdiction, a nonresident defendant may be sued in the forum if specific jurisdiction exists. *Id.* Specific jurisdiction arises when a defendant's specific contacts with the forum give rise to the claim in question. *Helicopteros Nacionales de Columbia S.A. v. Hall,* 466 U.S. 408, 414-16, 104 S.Ct. 1868, 80

L.Ed.2d 404 (1984). "A court exercises specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum."[4] *Glencore Grain Rotterdam BV v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir.2002). The Ninth Circuit employs a three part test to determine whether there is specific jurisdiction over a defendant:

(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

The first prong may be satisfied by "purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). In tort cases, courts typically inquire whether a defendant "purposefully directs his activities at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id*. In contrast, in contract cases, courts typically inquire whether a defendant "purposefully avails itself of the privilege of conducting activities or consummates a transaction in the forum, focusing on activities such as delivering goods or executing a contract." *Id.* (citation and internal punctuation omitted). However, either test can be applied to either tort or contract cases. *See, e.g., Language Line Servs., Inc. v. Language Servs. Ass'n, Inc.,* No. 10-cv-02605 JW, 2010 WL 5115671, at *3 (N.D. Cal. Dec. 9, 2010) (applying "effects" test to contract claims because the focus of the plaintiff's complaint was on the defendant's tortious conduct); *Sher v. Johnson,* 911

---

[4] "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800-01.

5

1  F.2d 1357, 1362 (9th Cir. 1990) (applying purposeful availment test to tort claims that arose out of
2  parties' contractual relationship).
3    The plaintiff bears the burden of satisfying the first two prongs of the test.
4  *Schwarzenegger,* 374 F.3d at 802. If the plaintiff fails to satisfy either of these prongs, personal
5  jurisdiction is not established in the forum state. *Id.* If the plaintiff succeeds in satisfying both of
6  the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the
7  exercise of jurisdiction would not be reasonable. *Id.*
8    Courts may "pierce the corporate veil" and assert jurisdiction over an individual defendant
9  where the individual is the "alter ego" of the corporation. *Davis v. Metro Prods., Inc.*, 885 F.2d
10 515, 520 (9th Cir. 1989). "To apply the alter ego doctrine, the court must determine (1) that there
11 is such unity of interest and ownership that the separate personalities of the corporation and the
12 individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or
13 injustice." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984).

## DISCUSSION

### I. Motion to compel arbitration

Dr. Gentry filled out and signed a form entitled REGISTRATION FORM/TERMS & CONDITIONS (the "Registration Form") in order to attend the Empire Medical Workshops. Dkt. No. 37 ¶¶ 3-4. The signature line of the Registration Form, which Dr. Gentry signed, states "By signing I agree to Terms/Conditions below." In turn, the following language appears below the signature line in small print in a section entitled CANCELLATION POLICY/TERMS AND CONDITIONS:

> All disputes arising from this agreement must be handled by Binding Arbitration in the state of Florida, Broward County, payable by the card holder.

*Id.* Ex. A (the "Arbitration Clause"). Empire Medical seeks to compel arbitration pursuant to the Arbitration Clause.

Dr. Gentry contends that the motion to compel arbitration should be denied because i) the Arbitration Clause is not broad enough to cover the conduct at issue and ii) the Arbitration Clause is unconscionable. As described below, the Court finds that the Arbitration Clause is

6

unconscionable. Accordingly, the Court need not, and does not, determine whether the Arbitration Clause would cover the allegations in the FAC.[5]

### A. Procedural unconscionability

Dr. Gentry asserts that she was not given the opportunity to negotiate any terms and conditions of the Registration Form, which included the Arbitration Clause (Dkt. No. 45 ¶ 4), rendering the agreement a contract of adhesion and presumptively procedurally unconscionable. Dr. Gentry also asserts that the Arbitration Clause is procedurally unconscionable because it is hidden "among numerous irrelevant terms," is typed in print smaller than other sections of the Registration Form, appears "way" below her signature, and is not bolded, underlined, set apart with a header, "or [in] any other way designed to draw attention to itself." Dkt. No. 47 at 17.

The Court agrees that the Arbitration Clause is part of a contract of adhesion and is thus presumptively unconscionable. The Court also agrees that the Arbitration Clause is at least somewhat procedurally unconscionable due to its appearance in a wordy document without being set apart or emphasized in any way.

### B. Substantive unconscionability

Dr. Gentry asserts that the Arbitration Clause is substantively unconscionable because i) it requires her to pay all costs of the arbitration and ii) it requires her to attend arbitration in Florida[6] even though the alleged events occurred in San Francisco and Dr. Gentry resides in the San Francisco Bay Area. The Court agrees that both of these provisions are unconscionable.

*First*, pursuant to the Arbitration Clause, all disputes arising from the Registration Form must be handled by arbitration, "payable by the card holder." Dkt. 37 at 5. The Registration Form requires a "Card Holder Signature" below the registrant's credit card information. *Id.* It is thus evident that "card holder" refers to the person paying for registration for the Empire Medical Workshops, Dr. Gentry in this instance. Such a one-sided provision demonstrates an extreme

---

[5] The Court grants Dr. Gentry's unopposed motion for leave to file a sur-reply to Empire Medical's motion to compel arbitration. Dkt. No. 59.

[6] Dr. Gentry lists "at least seven reasons" that the Arbitration Clause is substantively unconscionable. Dkt. No. 47 at 18. These seven reasons all relate to the requirements that the arbitration occur in Florida and be paid by Dr. Gentry.

7

1  "lack of mutuality" which California courts have found render arbitration clauses unenforceable.

2  *See, e.g., Nyulassy v. Lockheed Martin Corp.,* 120 Cal. App. 4th 1267, 1287 (Cal. App. 6th Dist.

3  2004) (arbitration clause that required employee, but not employer, to arbitrate was substantively

4  unconscionable for lack of mutuality); *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 175-176

5  (Cal. App. 2d Dist. 2002) (agreement that required arbitration of claims that employees were most

6  likely to bring against the defendant, but excluded from arbitration claims that the defendant was

7  most likely to bring against its employees was unconscionable); *Pinedo v. Premium Tobacco*

8  *Stores*, 85 Cal. App. 4th 774, 781 (Cal. App. 2d Dist. 2000) (arbitration clause requiring that all

9  costs be initially borne by employee was unconscionable, even though ultimately prevailing party

10 was entitled to recover all reasonable costs and fees).

11 Tellingly, the California Legislature has barred any arbitration company from

12 administering an arbitration under an arbitration clause that requires that the cost of arbitration be

13 borne by the losing party. Cal. Code Civ. Pro. § 1284.3(a).[7] The arbitration clause here is even

14 more offensive than the provisions the Legislature sought to prevent: the provision at issue here

15 requires Dr. Gentry to bear all costs, *even if she prevails*.[8]

16 *Second*, Dr. Gentry asserts that the requirement that arbitration occur in Florida, 3,000

17 miles away from the alleged conduct at issue (and from where she resides), renders the Arbitration

18 Clause substantively unconscionable. Dr. Gentry is right. An arbitration clause may be

19 unconscionable "if the place or manner in which arbitration is to occur is unreasonable taking into

---

[7] "No neutral arbitrator or private arbitration company shall administer a consumer arbitration under any agreement or rule requiring that a consumer who is a party to the arbitration pay the fees and costs incurred by an opposing party if the consumer does not prevail in the arbitration, including, but not limited to, the fees and costs of the arbitrator, provider organization, attorney, or witnesses." Cal. Code Civ. Pro. § 1284.3(a).

[8] The parties dispute whether Section 1284.3(a) governs the Arbitration Clause. Empire Medical contends that it does not because the arbitration is to occur in Florida; Dr. Gentry contends that it does because California law governs given that the parties contracted for services in California, and Dr. Gentry was harmed in California. The Court not need determine whether Section 1284.3(a) governs because the issue directly before the Court is whether Empire Medical may compel Dr. Gentry to arbitrate in the first instance; not whether any particular arbitration company may administer an arbitration under the Arbitration Clause. Nonetheless, as noted above, it is telling and persuasive to the Court's analysis that the California Legislature has deemed arbitration clauses less one-sided than the one at issue here against public policy.

account the respective circumstances of the parties." *Bolter v. Superior Court,* 104 Cal.Rptr.2d 888, 894 (2001). Accordingly, state and federal courts in California have found arbitration clauses that require parties to travel across the country to arbitrate their claims unconscionable. *See, e.g., Nagrampa v. MailCoups, Inc*., 469 F. 3d 1257, 1289 (9th Cir. 2006) (finding arbitration clause that "would require a one-woman franchisee who operates from her home to fly across the country [to Boston] to arbitrate a contract signed and performed in California" unconscionable); *Comb v. PayPal, Inc*., 218 F. Supp. 2d 1165, 1177 (N.D. Cal. 2002) ("Limiting venue to PayPal's backyard appears to be yet one more means by which the arbitration clause serves to shield Pay-Pal from liability instead of providing a neutral forum in which to arbitrate disputes."); *Bolter*, 87 Cal. App. 4th at 908 (finding forum selection provision in arbitration clause requiring arbitration in Utah unconscionable and noting that "[b]ecause Dry-Chem franchises are by nature small businesses, it is simply not a reasonable or affordable option for franchisees to abandon their offices [in California] for any length of time to litigate a dispute several thousand miles away"); *see also Patterson*, 14 Cal. App. 4th at 1665 ("While arbitration per se may be within the reasonable expectation of most consumers, it is much more difficult to believe that arbitration in Minnesota would be within the reasonable expectation of California consumers.").

### C. Severability

Empire Medical notes that if the costs and forum provisions were removed from the Arbitration Clause, the surviving clause would read: "All disputes arising from this agreement must be handled by binding arbitration. The arbitration award shall be binding upon the parties and shall be enforceable in any court of competent jurisdiction." Empire Medical thus urges that even if the Court finds the costs and forum provisions unconscionable, "the court could easily sever the allegedly unconscionable costs provision and choice of forum provision, leaving an acceptable arbitration clause." Dkt. No. 56 at 9. Not surprisingly, Dr. Gentry disagrees. She asserts that "[b]ecause the Clause is permeated with unconscionable provisions and is 'wholly [un]ascertainable,' the Court should decline to sever the rotten parts to save what remains of its infected core." *Id*. at 20.

A court has discretion to refuse to enforce an entire arbitration clause, rather than strike the

1  unconscionable provisions and enforce the remainder of the clause, if the entire arbitration clause
2  is "permeated" with unconscionability. *Lhotka*, 181 Cal. App. 4th at 826. An arbitration
3  agreement may be permeated with unconscionability if it contains more than one unconscionable
4  provision, because "multiple defects indicate a systematic effort to impose arbitration not simply
5  as an alternative to litigation, but as an inferior forum that works to the stronger party's
6  advantage." *Id.* (internal citation and punctuation omitted).

Given the extremely one-sided nature of the Arbitration Clause, and that the unconscionable provisions essentially comprise the only substantive portions of the clause, it is evident that the entire clause is permeated with unconscionability. Hiding the Arbitration Clause in a jumble of language below the signature line in tiny print, requiring its customers to participate in arbitration in Florida for claims arising in California, and making those customers bear the entire costs of arbitration, even if they prevail and regardless of who initiates the arbitration, conveys a clear effort by Empire Medical to impose arbitration as an inferior forum that works to its advantage. Accordingly, the Court declines to sever the unconscionable provisions and denies Empire Medical's motion to compel arbitration.

## II. Dr. Cosentino's motion to dismiss for lack of personal jurisdiction[9]

Dr. Cosentino asserts that he is not subject to specific personal jurisdiction in California, nor the "alter ego" of Empire Medical such that Empire Medical's corporate form can be disregarded and jurisdiction asserted over Dr. Cosentino. In response, Dr. Gentry argues that she has alleged sufficient facts both for the Court to assert specific personal jurisdiction over Dr. Cosentino and to show that Empire Medical is Dr. Cosentino's alter ego. As described below, the Court finds that Dr. Gentry has pleaded facts sufficient to subject Dr. Cosentino to personal jurisdiction in California.

Dr. Gentry makes the following allegations regarding Dr. Cosentino:

- he is the "founder, sole-owner, president, husband of the 'vice president,' sole director, registered agent, bill collector, marketer, instructor, blogger, and medical director of

---

[9] Dr. Gentry does not, at this stage, contend that Dr. Cosentino is subject to general jurisdiction in California.

- EMPIRE;" FAC ¶ 4;

- he has "complete dominion and control over EMPIRE." *Id*.;

- he "failed to separate his personal business from EMPIRE'S business, and has treated EMPIRE'S assets as his own." *Id*.;

- he is prominently featured in Empire Medical's website, fliers, and press releases that are "routinely directed to California residents in order to sell medical training workshops that take place in various locations throughout California." *Id*. ¶ 10;

- press releases directed at California residents state that "Empire Medical Training *with Dr. Stephen Cosentino* is an American based, nationally recognized CME Training Institution" and instruct those interested that "to inquiry [sic] further information about Empire Medical Training workshops, schedules, courses or programs contact *Dr. Stephen Cosentino*." *Id.* (emphasis added in FAC);

- he asserts that "[h]e is personally owed outstanding bills from EMPIRE'S allegedly errant customers (including payments from DR. GENTRY)." *Id.* ¶ 12;

- he asserts that "EMPIRE'S counsel personally represents DR. COSENTINO." *Id*.;

- he believes "that he can sue in his personal capacity for alleged wrongs committed against EMPIRE." *Id*.;

- he "personally witnessed Mr. Horninger inject a 'volunteer' with a drug" at a workshop in Dallas in 2009. *Id*. ¶ 23;

- he knew that MR. HORNINGER falsely held himself out as an anesthesiologist at a medical training workshop in Philadelphia in 2010, "as evidenced by DR. COSENTINO'S personal written reply to this accusation on a popular consumer website." *Id*. ¶ 24;

- he sent Mr. Horninger to California in connection with the Empire Medical Workshops despite knowing that Mr. Horninger was falsely holding himself out as a doctor and injecting individuals with a controlled and dangerous drug without a medical license. *Id*. ¶ 25; *Id.*, First Cause of Action ¶ 6;

- that after Dr. Gentry refused to pay for the workshops she attended, Dr. Cosentino personally emailed her in January 2013 and stated:

    o *I will* be filing a lawsuit on Thursday against you;

    o *My attorney* will also be looking to include attorney fees as well;

    o Attorney advised *I give* you 1 opportunity to settle;

    o Call *my office* and speak *with me* directly. I would prefer you do not call me because *I will get the full amount."*

*Id.* ¶ 46 (emphasis in FAC).  Dr. Cosentino has not filed affidavits contradicting any of these

11

allegations.[10]

A. Specific jurisdiction

1. Purposeful availment or direction

Dr. Cosentino asserts that Dr. Gentry fails to meet the purposeful availment prong because she has not pleaded facts demonstrating that Dr. Cosentino took any action in California and instead relies on conclusory allegations that Dr. Cosentino knew that Mr. Horninger falsely held himself out as a medical doctor and would inject controlled substances into workshop participants. The Court is not persuaded by Dr. Cosentino's arguments.

As an initial matter, Dr. Cosentino is incorrect to the extent that he argues that the fact that Dr. Cosentino himself was not present in California means that he cannot have purposefully availed himself of, or directed his conduct to, California. As the Ninth Circuit has explained, "purposeful availment is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). For example, in *Davis*, the Ninth Circuit upheld the exercise of specific personal jurisdiction over two individual defendants who were each 50% shareholders of the corporate defendant and its only officers and directors. 885 F.2d at 520. The Circuit explained that the individual defendants purposefully directed their activities towards the forum when the entity they controlled solicited business from forum residents. *See also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (finding purposeful availment of Nevada where defendant "specifically targeted consumers in Nevada by running radio and print advertisements in Las Vegas") (internal quotation marks omitted).

Moreover, contrary to Dr. Cosentino's characterization, Mr. Gentry has pleaded far more

---

[10] Dr. Cosentino objects that Dr. Gentry did not provide the email allegedly sent to her by Dr. Cosentino, did not provide any foundation for its admission, and that it is hearsay. Dkt. No. 49. Dr. Cosentino's objection is overruled. The plaintiff's version of facts is assumed to true on a motion to dismiss for lack of jurisdiction unless directly controverted. *Gator.Com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1075 (9th Cir. 2003) *on reh'g en banc,* 398 F.3d 1125 (9th Cir. 2005). At this stage, it is of no moment whether the proffered statements are ultimately admissible. In any event, in response to Dr. Cosentino's objection, Dr. Gentry provided the actual email and laid an adequate foundation. Dkt. No. 55-1, 55-2.

than just conclusory allegations demonstrating that Dr. Cosentino purposefully directed his activities at California. Taking the allegations in the FAC as true, Dr. Cosentino directed Mr. Horninger to go to California in connection with the Empire Medical Workshops and Dr. Cosentino is prominently featured in Empire Medical advertising and press releases directed at California. *See* FAC ¶ 10 (alleging that press releases directed at California state that "Empire Medical Training *with Dr. Stephen Cosentino* is an American based, nationally recognized CME Training Institution") (emphasis in FAC). At least some of this advertising directed California residents to contact Dr. Cosentino directly to get more information about Empire Medical's offerings. *Id*. Dr. Gentry has thus adequately pleaded that Dr. Cosentino purposely availed himself of California and directed his conduct here, especially in light of the uncontroverted allegations that Dr. Cosentino is the "founder, sole-owner, president, husband of the 'vice president,' sole director, registered agent, bill collector, marketer, instructor, blogger, and medical director" of Empire Medical. *See e.g., Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988) ("the solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment").

Dr. Gentry has also pleaded more than conclusory allegations that Dr. Cosentino knew that Mr. Horninger falsely held himself out as a medical doctor and injected controlled substances into workshop participants. She alleges that Dr. Cosentino personally witnessed Mr. Horninger inject someone with a drug at a workshop in 2009 and that he wrote a reply on a consumer website responding to an accusation that Mr. Horninger held himself out as an anesthesiologist at a workshop in Philadelphia. FAC ¶¶ 23-24.

While the fiduciary shield doctrine means that Dr. Cosentino's "mere association" with Empire Medical is insufficient to subject him to jurisdiction in California, his association with Empire Medical "does not somehow insulate [him] from jurisdiction." *Calder v. Jones,* 465 U.S. 783, 790 (1984). Rather, an employee's "contacts on behalf of the corporate employer may justifiably be imputed to the employee" for purposes of exercising personal jurisdiction under certain circumstances. *Matsunoki Grp., Inc. v. Timberwork Oregon, Inc.*, 08-cv-04078 CW, 2009 WL 1033818 (N.D. Cal. Apr. 16, 2009). Those circumstances are present here, as noted below in

1    the alter ego discussion.

2        Dr. Cosentino argues that this case is like *Vance's Foods, Inc. v. Special Diets Europe Ltd.*,
3    11-cv-02943-MCE, 2012 WL 1353898 (E.D. Cal. Apr. 16, 2012), where the court concluded that
4    the plaintiff's conclusory allegations that a corporate officer, who resided in Ireland, availed
5    herself of the state's forum were not sufficient to subject her to personal jurisdiction in California.
6    *Vance* does not support Dr. Cosentino's argument.  The issue there was whether the defendant
7    officer was the "guiding spirit" behind the alleged wrongful conduct, such that the conduct could
8    be imputed to the officer.  The plaintiff did not allege that the officer solicited business in
9    California or engaged in any other conduct directed at California; the only factual allegation
10   demonstrating the officer's purported connection to the alleged conduct was one phone
11   conversation between the officer and a representative of the plaintiff.  The court concluded that
12   that allegation was "insufficient to plausibly demonstrate that [the officer] was a 'guiding spirit'
13   behind the alleged wrongful conduct." *Id.*

14       Dr. Cosentino's citation to *Fasugbe v. Willms*, 10-cv-2320-WBS, 2011 WL 3667440 (E.D.
15   Cal. Aug. 22, 2011) is also not helpful.  There the court granted a motion to dismiss an individual
16   defendant, explaining that the plaintiff merely "track[ed] the language from [cases setting
17   standards for asserting jurisdiction] with conclusory statements that [the individual] was a
18   "guiding spirit" and "central figure" and made all final decisions."  The court explained that "[i]f
19   the court were to deem such conclusory allegations sufficient on a motion to dismiss, a plaintiff
20   could force any officer of a company to defend a suit in his personal capacity simply by using the
21   magic language that he was the "guiding spirit" behind the allegedly wrongful conduct or the
22   "central figure in the challenged corporate activity." *Id.*

23       In contrast to *Vance* and *Fasugbe*, Dr. Gentry has alleged far more than just conclusory
24   statements that Dr. Cosentino was the guiding spirit behind the conduct at issue. As noted above,
25   she has pleaded uncontroverted facts demonstrating that Dr. Cosentino was aware that Mr.
26   Horninger had been accused of falsely holding himself out as a doctor; that he personally
27   witnessed Mr. Horninger inject a workshop participant with chemicals; that Dr. Cosentino
28   personally  solicited business in California; that he sent Mr. Horninger to teach the Empire

United States District Court
Northern District of California

Medical Workshops in California, and that he is the "founder, sole-owner, president, husband of the 'vice president,' sole director, registered agent, bill collector, marketer, instructor, blogger, and medical director" of Empire Medical.

### 2.  Claim relating to forum-related activities

The Court finds that Dr. Gentry has adequately pleaded that her claims arise out of Dr. Cosentino forum-related activities. Her claims arise out of an Empire Medical workshop in California, led by Mr. Horninger. Dr. Gentry's alleged injuries would not have occurred but for Dr. Cosentino's forum-directed activities described above, namely soliciting California residents to enroll in the workshop and directing Mr. Horninger to California to lead the workshop. *See, e.g., Ballard*, 65 F.3d at 1500 (claim against Austrian bank for participation in Ponzi scheme arose from bank's forum-related activities because if bank did not conduct business in the United States, chief perpetrator of scheme would not have opened account with bank and filled it with ill-gotten funds).

### 3.  Reasonableness

Once a court determines that a defendant has purposefully availed himself of, or purposefully directed conduct to, the forum state, it is presumed that asserting jurisdiction over the defendant is reasonable. *Id.* To overcome the presumption, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 2185, 85 L. Ed. 2d 528 (1985). Seven factors guide the determination whether the exercise of jurisdiction comports with "fair play and substantial justice," and is therefore reasonable: (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Dole Food Co.,* 303 F.3d at 1114. Dr. Cosentino has not me this burden.

Dr. Cosentino contends that the burden on him "to have to defend himself on the West

1  Coast, when he resides on the East Coast, is significant. It would be an extraordinary burden in
2  terms of time and expense on his medical practice to force him to travel to California to defend
3  this lawsuit." Dkt. No. 30 at 14. Ironically, this is the exact "extraordinary burden" that Empire
4  Medical seeks to impose upon Dr. Gentry by forcing her to arbitrate her claims in Florida. But
5  unlike Dr. Cosentino, Dr. Gentry has no connection to a forum across the country. Given that Dr.
6  Cosentino purposefully solicited business in California and sent his company to California to
7  conduct the Empire Medical Workshops, it is reasonable to subject him to personal jurisdiction
8  here. Moreover, it appears that the burden on Dr. Cosentino is somewhat mitigated by the fact
9  that his company, Empire Medical, with which Dr. Cosentino shares counsel, would be defending
10 these claims in California in any event.

### B. Alter ego

Dr. Cosentino asserts that Dr. Gentry's alter ego allegations "are nothing more than another attempt to impose personal jurisdiction through bare conclusory legal conclusions." Dkt. No. 30 at 14. The Court disagrees and finds that Dr. Gentry has adequately pleaded that Dr. Cosentino is the alter ego of Empire Medical. In particular, the Court finds that the following factual allegations sufficiently allege that Dr. Cosentino is Empire Medical's alter ago: that Dr. Cosentino is the "founder, sole-owner, president, husband of the 'vice president,' sole director, registered agent, bill collector, marketer, instructor, blogger, and medical director of EMPIRE;" that press releases and advertising associate him personally with Empire Medical; that he asserts that he is personally owed outstanding bills from Empire Medical's customers; that he asserts that Empire Medical's counsel represents him personally; that he believes that he can sue in his personal capacity for alleged wrongs committed against Empire Medical; and that he stated to Dr. Gentry, through email:

- *I* will be filing a lawsuit on Thursday against you;
- *My* attorney will also be looking to include attorney fees as well;
- Attorney advised *I* give you 1 opportunity to settle;
- Call *my* office and speak with *me* directly. I would prefer you do not call me because *I* will get the full amount."

1   *Id.* ¶ 46 (emphasis in FAC).  These allegations more than adequately plead that there is such a
2   unity of interest and ownership between Dr. Cosentino and Empire Medical that their separate
3   personalities no longer exists and failure to disregard the corporate form would be unjust.

## CONCLUSION

Empire Medical's motion to compel arbitration is DENIED.  Dr. Cosentino's motion to dismiss for lack of personal jurisdiction is DENIED.  As a result, Dr. Gentry's motion to take jurisdictional discovery is DENIED as moot.

**IT IS SO ORDERED**.

Dated: August 29, 2013

_____
WILLIAM H. ORRICK
United States District Judge